UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERVELIN A. GOMEZ, | |
| Plaintiff, | Civil Action No. 2:17-13708 (MCA) (MAH) |
| vs. | |
| FORSTER & GARBUS LLP, et al. | OPINION |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiff Mervelin A. Gomez's Motion for Leave to File an Amended Complaint. Defendants oppose the motion. The Court decided this motion without oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## II. BACKGROUND

This action arises from the alleged collection of a debt from the wrong person.[1] *See* Proposed Am. Compl. ¶ 1, D.E. 26-3. Defendant LVNV Funding LLC ("LVNV") purchases past-due and defaulted consumer accounts and then attempts to collect the accounts itself or through collection agencies. *Id.* ¶ 14. "[P]ursuant to a written agreement and power of attorney," Defendant Resurgent Capital Services, L.P. ("Resurgent") directly manages LVNV's asset portfolios and collection activities. *Id.* ¶ 21; *see also id.* ¶¶ 22, 25. "Resurgent and LVNV are

---

[1] The Court accepts as true the factual allegations in the proposed pleading. *See Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 195 (3d Cir. 2016); *Abelard v. Clean Earth Inc.*, No. 16-5276, 2017 WL 600082, at *1 n.1 (D.N.J. Feb. 14, 2017).

1

under common ownership and management; both are part of the Sherman Financial Group, LLC."[2] *Id.* ¶ 24. Those entities have retained the law firm of Forster & Garbus LLP ("F&G") to assist them in their debt collection activities. *See id.* ¶¶ 15-17.

In March 2009, Defendants obtained a default judgment against a person named Mevelyn Gomez in New York pertaining to certain unpaid financial obligations on a Citibank USA, N.A. account. *Id.* ¶¶ 29, 31-32. "Beginning 2016—seven years after obtaining judgment against a person named Mevelyn Gomez—LVNV began sending dunning letters to Plaintiff through collection agencies." *Id.* ¶ 35. Specifically, Plaintiff received a letter dated December 28, 2016 in which F&G demanded the immediate payment of $2,505.33. *Id.* ¶¶ 36-37. According to Plaintiff, the problems with the collection efforts were two-fold: (1) "Plaintiff's name is Mervelin A. Gomez, not Mevelyn Gomez," *id.* ¶ 33; and (2) "Plaintiff never had a Citibank account until 2015[,]" *id.* ¶ 39.

In January 2017, "Defendants levied on [Plaintiff's] New Jersey bank account in the amount of $5,026.50." *Id.* ¶ 41. Upon learning that her account had been levied, Plaintiff repeatedly communicated to Defendants that she was not the debtor. *Id.* ¶¶ 43-44. On October 23, 2017, Plaintiff mailed a completed Federal Trade Commission ("FTC") ID Theft Affidavit to F&G to substantiate her claim. *Id.* ¶ 46.

Plaintiff's attempts to dispute the collection efforts were to no avail. "Defendants continued to ignore Plaintiff's pleas to return her funds; and on October 30, 2017, Defendants withdrew $2,513.25 from Plaintiff's bank account." *Id.* ¶ 47. "On November 1, 2017, Plaintiff faxed the FTC ID Theft Affidavit to F&G and requested that the levied funds be returned." *Id.* ¶

---

[2] Sherman Financial Group, LLC is not a party to this action.

48. "The same day, Plaintiff also mailed the FTC ID Theft Affidavit to LVNV and requested that the levied funds be returned." *Id.* Five weeks later, Resurgent informed Plaintiff by letter that "[f]ollowing [its] research into the matter, this account has been closed." *Id.* ¶ 50.

On December 26, 2017, Defendants returned the $2,513.25. *Id.* ¶¶ 52-54. The next day, Plaintiff filed this action asserting that Defendants violated the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, in collecting a debt that she never incurred. Compl., ¶¶ 49-56, D.E. 1. As the matter proceeded through discovery, this Court entered an Amended Scheduling Order that provided that "[a]ny motion to add new parties or amend pleadings, whether by amended or third-party complaint, must be filed not later than May 10, 2019." Amended Scheduling Order, March 19, 2019, D.E. 25. On May 10, 2019, Plaintiff filed the herein motion. Pl.'s Mot. to Amend, D.E. 26. Specifically, Plaintiff seeks to amend the complaint to include new factual allegations as well as an invasion of privacy claim (Count Two) and violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -212 (Count Three).

### III. ANALYSIS

"Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). Notwithstanding that liberal standard, "[d]enial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)).

3

Defendants focus on the undue delay, prejudice, and futility factors in their opposition to the instant motion. "The 'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin*, 875 F.3d at 151. "Undue delay is 'protracted and unjustified'—it 'can place a burden on the court or counterparty' or show 'a lack of diligence sufficient to justify a discretionary denial of leave.'" *Spartan Concrete Prods., LLC*, 929 F.3d at 115 (quoting *Mullin*, 875 F.3d at 151). Denial of leave to amend is appropriate "when the movant delays completion of discovery" or "when adding a new claim would 'fundamentally alter[] the proceeding and could have been asserted earlier.'" *Id.* at 115-16 (alteration in original) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001)). The inquiry "focus[es] on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 274.

"Prejudice involves the serious impairment of the defendant's ability to present its case." *Formosa Plastics Corp., U.S.A.* v. ACE Am. Ins. Co., 259 F.R.D. 95, 99 (D.N.J. 2009) (citing *Dole v. Arco Chem. Co.*, 921 F.3d 484, 488 (3d Cir. 1990)). Many considerations in the undue delay analysis overlap with the inquiry into whether the non-movant will suffer prejudice. *See id.*; *Cureton*, 252 F.3d at 273 (noting that the Third Circuit has "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defendant against new facts or new theories").

Futility is assessed by determining whether the proposed amendment can "withstand a renewed motion to dismiss.'" *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). In this analysis, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *In re Burlington Coat Sec. Litig.*, 114 F.3d 1410, 1434 (3d

Cir. 1997)). The inquiry is not whether the movant will ultimately prevail, but whether the proposed pleading sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). More specifically, the Court "accept[s] all factual allegations in the complaint as true and, examining for plausibility, 'determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (quoting *Bronowicz v. Allegheny County*, 804 F.3d 338, 344 (3d Cir. 2015)). The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

The Court will grant Plaintiff leave to amend her complaint to include the new factual allegations and the invasion of privacy claim. Given that Plaintiff complied with the Court's May 10, 2019, deadline, this Court cannot conclude that Plaintiff's delay in seeking leave to amend was "undue" or prejudicial to Defendants. *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2017 WL 4404567 (D.N.J. Oct. 4, 2017) ("[P]laintiffs' timeliness in seeking leave, within the deadline for amending pleadings proposed by the parties . . . and set by the Court pursuant to Rule 16, seems incongruous with [defendant's] argument that plaintiffs delayed in filing this motion."); *Astrazeneca AB v. Perrigo Co. PLC*, No. 15-1057, 2015 WL 8483298, at *4 (D.N.J. Dec. 8, 2015) ("The Court would find it difficult to hold that a motion filed within the deadline set by the Court and known to the parties was the product of undue delay."). With respect to the invasion of privacy claim, this Court holds that Plaintiff has plausibly alleged that Defendants' levy of her bank account would be highly offensive to a reasonable person. On the other hand, the Court finds that granting Plaintiff leave to plead her CFA claim would be futile.

Debt-buyers and their affiliates are not subject to CFA, *see Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 847 (D.N.J. 2011), and the Proposed Amended Complaint does not contain any allegations establishing that Defendants engaged in any unconscionable practice as defined by the Act, *see* N.J. Stat. Ann. §§ 56:8-1(c), -2.

### 1. Invasion of Privacy Claim (Count Two)

"In New Jersey, invasion of privacy is an umbrella category that includes a number of distinct torts." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290-91 (3d Cir. 2016) (citing *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (explaining that invasion of privacy "is not one tort, but a complex of four . . . tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone" (quoting William L. Prosser, *The Law of Torts* § 112 (3d ed. 1964)))). "By freezing Plaintiff's account and taking her funds," Plaintiff alleges that Defendants' conduct was tantamount to two invasion of privacy torts: intrusion on seclusion and placing her in a false light. *See* Proposed Am. Compl. ¶ 66. Specifically, Plaintiff asserts (1) that "Defendants' invasions of privacy constituted an intentional intrusion upon Plaintiff's private concerns regarding her access to and liquidity of the funds in her bank account," *id.* ¶ 68; and (2) "Defendants' invasions of privacy placed the Plaintiff in a false light which [is] highly offensive to her, and which would be highly offensive to a reasonable person," *id.* ¶ 69. The Court concludes that the factual allegations in the Proposed Amended Complaint plausibly establish that Plaintiff may be entitled to relief on those claims.

Defendants make two arguments in opposing the amendment: (1) the Proposed Amended Complaint only sets forth "bald assertions" that merely recite the elements of an intrusion on

seclusion claim; and (2) the timing of the putative intrusion precludes a finding of liability.[3] Defs.' Br. at 1, 7-9, D.E. 32. To establish liability for the tort of "intrusion on seclusion," the plaintiff must establish: (1) that the tortfeasor "intentionally intrud[ed], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns"; and (2) that "the intrusion would be highly offensive to a reasonable person." *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010) (quoting *Restatement (Second) of Torts* § 652B). As the commentary to the *Restatement* explains, the intrusion need not be physical or publicized.

> It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

*Restatement (Second) of Torts* § 652B, cmt. B.

---

[3] Under New Jersey law, false light is a separate cause of action from intrusion on seclusion. *Rumbauskas*, 649 A.2d at 856. To adequately plead a false light claim, Plaintiff must allege "(1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1116 (N.J. 2009) (quoting *Romaine v. Kallinger*, 537 A.2d 284, 290 (N.J. 1988)). Plaintiff alleges that in the course of levying on her bank account, Defendants "disclosed false information about her creditworthiness and reputation and . . . publicly placed her in a false light in the public eye, including to her bank, courts and creditors." Proposed Am. Compl. ¶ 66. A reasonable reading of those allegations may establish that Plaintiff is entitled to relief on a false-light claim.

However, Plaintiff, as the master of her own pleading, has not separately set forth a false-light claim as a distinct count in the Proposed Amended Complaint. As a general proposition, "Rule 10(b) requires that 'each claim founded on a separate transaction or occurrence . . . must be stated in a separate count' if doing so would promote clarity." *Schiano v. MBNA*, No. 05-1771, 2013 WL 2452681, at * 10 n.18 (D.N.J. Feb. 11, 2013) (quoting Fed. R. Civ. P. 10(b)); *see also Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (3d Cir. 1951) ("The purpose of the requirement of separate counts is to clarify the issues and simplify the trial."). This Court has considered the false-light claim solely in the context of Plaintiff's motion for leave to amend the complaint to include an invasion of privacy claim.

The commentary further sheds light on what constitutes an objectively offensive interference in the context of debt collection:

> [T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

*Id.*, cmt. D. The *Restatement* also offers the following useful illustration:

> A is seeking evidence for use in a civil action he is bringing against B. He goes to the bank in which B has his personal account, exhibits a forged court order, and demands to be allowed to examine the bank's records of the account. The bank submits to the order and permits him to do so. A has invaded B's privacy.

*Id.*, illustration 4.

The Court finds the factual allegations in the Proposed Amended Complaint to be sufficiently analogous to the aforementioned illustration to allow Plaintiff to add Count Two. Plaintiff alleges that "Defendants collected from the wrong person, froze Plaintiff's bank account and then subsequently withdrew money from Plaintiff's bank when Defendants had knowledge of the mistaken identity and/or that they were trying to collect a debt from the wrong person." Proposed Am. Compl. ¶ 65. By allegedly accessing Plaintiff's bank account with knowledge of the mistaken identity, it is plausible that Defendants committed the privacy tort of inclusion on seclusion.

Defendants emphasize that "[a]fter Defendants obtained a judgment and levied on her account, only then did Plaintiff inform Defendants that the account was fraudulent procured." *Id.* at 1. According to Defendants, "[a]s soon as Plaintiff provided proof, Defendants expeditiously vacated judgment and subsequently returned all levied funds to Plaintiff's account." *Id.* at 2. In their view, "[t]his conduct is no more 'highly offensive' than it is negligent on Plaintiff's part."

*Id.* at 9. This Court cannot subscribe to Defendants' characterization of the allegations at this stage of the proceedings. Notably, Defendants do not suggest that debt collection activities could not, as a matter of law, constitute an invasion of privacy.[4] They suggest only that the allegations are insufficient here. But viewing the allegations in a light most favorable to Plaintiff, as this Court must on a motion to dismiss, the Court cannot agree. Plaintiff has alleged sufficient factual content that allows this Court to draw the reasonable inference that Defendants' levy of Plaintiff's bank account and subsequent withdrawal of the funds amounted to an intrusion on seclusion.

### 2. The Consumer Fraud Act (Count Three)

The Court will deny Plaintiff leave to amend to plead a CFA claim against LVNV and Resurgent. The central issue here is whether Plaintiff has plausibly alleged that those entities engaged in an "unlawful practice" under the CFA. N.J. Stat. Ann. § 56:8-2. The Court concludes that factual allegations in the Proposed Amended Complaint do not suggest that LVNV and Resurgent's practices are covered by the CFA.

The CFA prescribes that

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

---

[4] Courts in other jurisdictions have held that the attempted collection of a debt from the wrong person may establish an invasion of privacy claim. *See, e.g., Williams v. Rodenburg LLP*, No. 17-4962, 2018 WL 5801889, at *6 (D. Minn. Nov. 6, 2018) (holding that plaintiff adequately pleaded invasion of privacy claim under Minnesota state law when defendants alleged attempted to collect a debt from the wrong person); *Reid v. LVNV Funding LLC*, No. 14-471, 2015 WL 926146, at *4 (D. Utah Mar. 4, 2015) (holding that plaintiff adequately pleaded invasion of privacy claim under Utah state law when defendants allegedly garnished the wrong person's wages).

9

*Id.* Accordingly, "[t]he Act proscribes unconscionable acts relating to both the initial sale and advertisement of merchandise by a seller, and the 'subsequent performance of such person as aforesaid.'" *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 846 (D.N.J. 2011) (quoting N.J. Stat. Ann. § 56:8-2).

The CFA supplies many of the relevant definitions that delineate the Act's reach. *See Lee v. First Union Nat'l Bank*, 971 A.2d 1054, 1059 (N.J. 2009) (stating that the remedial construction accorded to the CFA must adhere to "the definitions that control the boundaries of the Act's reach"). The CFA defines a "sale" as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or directly to sell, rent or distribute." N.J. Stat. Ann. § 56:8-1(e). An "advertisement" is defined as "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J. Stat. Ann. § 56:8-1(a). "The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J. Stat. Ann. § 56-8:1(c).

Based on those definitions, the CFA "appl[ies] to the offering, sale, or provision of consumer credit." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997). However, it is well-settled that the activities of debt buyers such as LVNV and Resurgent do not fall within the purview of the CFA. "Debt collection activities on behalf of a third party who may have sold merchandise are not unconscionable activities 'in connection with the sale' of merchandise." *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 64 A.3d 579, 588 (N.J. Sup. Ct. App. Div. 2013) (holding that collection agency's contacts with debtor do not constitute "an offer to sell merchandise"). Nor is a debt buyer "a 'seller' whose 'subsequent

10

performance' falls within the ambit of the [CFA]." *Chulsky*, 777 F. Supp. 2d at 847 (finding "no basis for predicting that the New Jersey Supreme Court would hold that the legislature intended the [CFA] to reach the debt collection activities of a debt buyer of defaulted credit card debt").

Nothing in the Proposed Amended Complaint differentiates LVNV and Resurgent's business practices from the aforementioned principles. Plaintiff alleges that "Defendants are not in the business of extending credit, selling goods or services to consumers." Proposed Am. Compl. ¶ 9. Rather, LVNV's "only business is to purchase consumer debts that are in default, mostly from affiliated entities that purchased the debts from others, and attempt to collect those debts through litigation." *Id.* ¶ 20 (quoting *LVNV Funding LLC v. Finch*, 207 A.3d 202, 205 (Md. 2019)). "Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors, including LVNV, and performs these services on their behalf." *Id.* ¶ 22. Absent any participation in the underlying extension of consumer credit, neither LVNV nor Resurgent's alleged malfeasance is covered by the CFA.

The Court also finds Plaintiff's reliance on *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011) to be misplaced. The issue in *Gonzalez* was whether predatory terms contained in a post-judgment settlement agreement arising from a mortgagor's default on a loan are subject to the CFA. *Id.* at 1107. The New Jersey Supreme Court answered that question in the affirmative, holding that "the post-foreclosure-judgment agreements in this case [are] both in form and substance an extension of credit to plaintiff originating from the initial loan." *Id.* Critically, the *Gonzalez* Court noted that U.S. Bank "[u]nquestionably . . . had the right to proceed with a sheriff's sale to satisfy its judgment" prior to entering into those agreements. *Id.* at 1117. "Had it done so," the Court continued, "plaintiff admittedly would have had no reason to complain." *Id.*

In this Court's view, proceeding with a sheriff's sale is no different than obtaining a bank levy on a debtor's account following the obtainment of a judgment. The circumstances surrounding those post-judgment settlement agreements in *Gonzalez* as well as their terms and conditions are distinguishable from LVNV and Resurgent's debt-buying practices. Rather than satisfying the judgment in the normal course, U.S. Bank and its servicing agent entered into the *new* agreements that required the plaintiff to "pay, on a monthly basis, arrearages on the loan, which included built-in foreclosure costs, interest, late fees, counsel fees and forced-placed insurances." *Id.* "For plaintiff, the fulfillment of the agreements held out the prospect of the dismissal of the foreclosure judgment and the probable reinstatement of the loan." *Id.* According to the New Jersey Supreme Court, the collection efforts pursuant to the agreed-upon terms qualified as "'subsequent performance' in connection with a newly minted loan." *Id.* at 1118. The *Gonzalez* Court emphasized that a contrary holding would leave "the abusive collection practices of servicing agents . . . in the midst of an unprecedented foreclosure crisis . . . as a free-for-all zone." *Id.* Those agreements are very different than the routine mechanism of obtaining a bank levy, albeit against the wrong person, pursuant to a duly issued judgment. Accordingly, this Court holds that granting Plaintiff leave to amend the complaint to include a CFA would be futile.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Leave to File an Amended Complaint is granted in part and denied in part. An appropriate order will follow.


                                       *s/ Michael A. Hammer*
                                       **UNITED STATES MAGISTRATE JUDGE**

Dated: October 22, 2019