UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 7, 2022

VIA ECF

**LETTER ORDER**

Re:   Mervelin A. Gomez v. Forster & Garbus, LLP, et al.
       Civil Action No. 17-13708

Dear Litigants:

Before the Court are (1) Defendants LVNV Funding, LLC's ("LVNV") and Resurgent Capital Services, L.P.'s ("Resurgent") Motion for Summary Judgment, ECF No. 98; (2) Defendant Forster & Garbus, LLP's ("F&G" and together with LVNV and Resurgent, "Defendants") Motion for Summary Judgment, ECF No. 99; and (3) Plaintiff Mervelin A. Gomez's ("Plaintiff") Motion for Partial Summary Judgment on Liability, ECF No. 100. Each Motion is opposed. ECF Nos. 106, 107, 108. For the reasons explained below, Defendants' Motions are **DENIED**, and Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

**I.    FACTUAL BACKGROUND**[1]

This action arises out of Defendants' attempt to collect a debt incurred by an unknown individual using a name similar to Plaintiffs' name. See generally Second Am. Compl. ("SAC"), ECF No. 75.

At some point prior to March 26, 2008, an individual using the name "Mevelyn" Gomez and allegedly residing at an address in New York (the "New York Address") opened a credit account with Citibank (the "Account"). DSOMF ¶ 1. Plaintiff, who has never gone by a name other than "Mervelin," resided at the New York Address from 1994-1997 and 2003-2004 but has since lived in East Orange, New Jersey. DSOMF ¶¶ 2-3; PSOMF ¶¶ 1-4. Plaintiff's mother has resided at the New York Address from at least 1994 through 2020. DSOMF ¶ 4. Plaintiff testified that she did not authorize anyone to use her personal information to obtain the Account and did not receive any money, goods, services, or other benefits related to the Account. PSOMF ¶ 5.

---

[1] These facts are drawn from LVNV's and Resurgent's Statement of Material Facts ("DSOMF"), ECF No. 98.2, Plaintiff's Statement of Undisputed Material Facts ("PSOMF"), ECF No. 100.2, and the relevant record. F&G principally relies on the submissions made by LVNV and Resurgent. See ECF Nos. 99, 107.

Ultimately, the user of the Account incurred a balance of $1223.36 (the "Debt") and defaulted. DSOMF ¶¶ 5-6. Thereafter, LVNV[2] acquired the Debt and in 2008, brought an action in New York state court against "Mevelyn" to recover the Debt. DSOMF ¶¶ 6-7. On March 6, 2009, LVNV obtained a default judgment against "Mevelyn" in the amount of $1476.25 (the "New York Judgment"). Id. ¶ 9. In January 2017, F&G asked PNC Bank ("PNC") to levy on a bank account owned by Plaintiff, and PNC complied. Id. ¶¶ 13-14. The response from PNC listed Plaintiff's correct name—Mervelin A. Gomez—as the name associated with the account. Fany Ortiz Dep. Tr. 70:11-71:03, ECF No. 100.6.

On March 10, 2017, F&G received a letter from Plaintiff identifying herself as "Mervelin," disputing the Debt, and informing F&G that the underlying Account did not belong to her. DSOMF ¶ 17; Declaration of Peter G. Siachos ("Siachos Decl.") Ex. 8, ECF No. 98.11. F&G responded on March 17, 2017, informing Plaintiff that she must submit a sworn ID Theft Affidavit[3] before F&G would consider her claim of identity theft. DSOMF ¶ 19; Siachos Decl. Ex. 9, ECF No. 98.12. From May to September 2017, Plaintiff sent four additional dispute letters to F&G, stating that she had not lived in New York since 1996[4] and demanding the release of her funds. DSOMF ¶¶ 20, 23, 26. F&G again declined to take any action unless Plaintiff submitted the requested affidavit. Id. ¶¶ 22, 24. On October 25, 2017, F&G received a sixth letter from Plaintiff, this time enclosing an executed ID Theft Affidavit. DSOMF ¶¶ 27-29. Plaintiff also forwarded the affidavit directly to LVNV on November 1, 2017. Id. ¶ 30.

While the levy on Plaintiff's bank account was in effect, Defendants withdrew funds from the account.[5] After Defendants received and reviewed the completed ID Theft Affidavit, Resurgent informed Plaintiff on December 4, 2017 that her account had been closed and on January 2, 2018, sent Plaintiff a refund check in the amount of $2311.74. Id. ¶¶ 32-33.

## II.   PROCEDURAL HISTORY

Plaintiff initiated this action on December 27, 2017 through a complaint alleging one count against Defendants under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA"). In a written opinion dated October 22, 2019, Magistrate Judge Hammer granted leave to file an amended complaint asserting an additional count for intrusion upon seclusion under New Jersey common law. ECF No. 50 (the "October 2019 Opinion"). Judge Hammer held that

---

[2] Resurgent acts as LVNV's Master Servicer with respect to the collection of debt owed to LVNV, overseeing anything related to the accounts and returning any money acquired to LVNV. PSOMF ¶¶ 32-35.

[3] The ID Theft Affidavit is "a model form that can be used to report information to many companies, simplifying the process of alerting companies where a new account was opened in the victim's name." See FTC, Federal Trade Commission Announces ID Theft Affidavit, https://www.ftc.gov/news-events/press-releases/2002/02/federal-trade-commission-announces-id-theft-affidavit (last visited April 7, 2022).

[4] Plaintiff concedes that this statement was partially inaccurate, as she lived at the New York Address for a time during the years 2003 and 2004 as well. DSOMF ¶ 21.

[5] The exact date of the withdrawal is unclear from the record, though Plaintiff's November 1, 2017 letter requesting the return of "all funds [drawn] from my bank account" suggests the withdrawal occurred prior to that date. See Siachos Decl. Ex. 17, ECF No. 98.20.

Plaintiff's allegations that Defendants "access[ed] Plaintiff's bank account with knowledge of the mistaken identity" plausibly alleged a "highly offensive" intrusion upon seclusion. Id. at 8-9.[6]

On June 22, 2020, the Court dismissed Plaintiff's FDCPA claim without prejudice for failure to cite the specific provisions of the statute that Plaintiff contends were violated. ECF No. 68, at 3. However, the Court declined to dismiss the intrusion upon seclusion claim after adopting the reasoning of Judge Hammer's opinion. Id. at 4. On September 11, 2020, Plaintiff filed the operative SAC alleging claims for (1) violations of FDCPA Sections 1692d, 1692e, and 1629f ("Count I") and (2) intrusion upon seclusion ("Count II"). ECF No. 75. The Court denied Defendants' subsequent Motion to Dismiss Count I to the extent that it asserted violations of FDCPA sections 1692d, 1692(e)(2)(A), and 1692f. ECF No. 85 (the "May 2021 Order"), at 4-6.[7] The Court held, among other things, that a reasonable jury could find that Defendants violated the FDCPA by withdrawing funds from Plaintiff's bank account pursuant to a judgment obtained against third party. Id. at 5-6.

Following discovery, the parties now move for summary judgment. ECF Nos. 98, 99, 100.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

The Court construes all facts and inferences in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted).

### IV. ANALYSIS

#### A. Fair Debt Collection Practices Act (Count I)

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014). The FDCPA imposes strict liability for a violation, regardless of "defendant's lack of knowledge or intent." Glover v. F.D.I.C., 698 F.3d 139, 149 (3d Cir. 2012). A debt collector who

---

[6] Judge Hammer further held that Plaintiff had not set forth an independent claim of "false light," and also denied leave to add a claim under the New Jersey Consumer Fraud Act. Oct. 2019 Opinion at 7 n.3, 9-12.

[7] The Court dismissed Plaintiff's claims arising under Sections 1692e(4) and 1692e(5).

fails to comply with the FDCPA may be held liable for (1) actual damages; (2) statutory damages, not to exceed $1000; and (3) reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a).

The parties dispute only the fourth element of Plaintiff's claim, i.e., whether Defendants violated a provision of the FDCPA in attempting to collect the Debt from Plaintiff. Plaintiff asserts violations of FDCPA Sections 1692d, 1692(e)(2)(A), and 1692f, which the Court will address in turn.[8]

### 1. Section 1692d

Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." Corson v. Accounts Receivable Mgmt., Inc., No. 13-1903, 2013 WL 4047577, at *5 (D.N.J. Aug. 9, 2013) (citation omitted).

Defendants do not separately address each alleged violation of the FDCPA, but instead make three broad arguments directed to Count I as a whole. First, Defendants contend that levying a debtor's bank account in accordance with a valid judgment does not violate the FDCPA as a matter of law. The Court has already considered and rejected this argument under the facts of this case, holding that a reasonable jury could conclude that Defendants engaged in oppressive or abusive conduct by withdrawing funds and failing to release the levy on Plaintiff's bank account for months after Plaintiff first placed Defendants on notice that her name did not match the name listed on the New York Judgment. See May 2021 Order, at 5-6. The Court declines to revisit its prior holding here.

Second, Defendants argue that the FDCPA does not impose an independent duty to "investigate" the validity of debts. The Court previously addressed this argument as well, noting that Plaintiff does not allege the breach of any duty to investigate. Rather, Plaintiff asserts that Defendants are strictly liability for violations of the FDCPA regardless of Defendants' knowledge, intent, or reasonable care. As the Court expressly noted in its prior order, "a defendant can avoid strict liability only by demonstrating 'by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" May 2021 Order at 4 n.5 (quoting 15 U.S.C. § 1692k(c)). Critically, Defendants have presented no evidence of procedures designed to avoid levying on an improper bank account nor otherwise argued that the "bona fide error" affirmative defense applies here.

Finally, Defendants contend that they were entitled to maintain their levy and withdraw funds from Plaintiff's account unless and until Plaintiff provided stronger evidence of identity theft in the form of an ID Theft Affidavit. Defendants have cited no authority suggesting that Plaintiff's failure to provide evidence in the form they requested absolves them of liability as a matter of law. Instead, the Court finds that F&G's instruction that Plaintiff must submit an ID Theft Affidavit before Defendants would take any action is simply one factor that a jury may consider in determining whether Defendants' course of conduct was harassing or oppressive.

---

[8] Plaintiff's reply in support of her Motion argues for the first time that Defendants violated Section 1692c(c) by failing to cease collection attempts after a written demand. Pl. Reply at 2, ECF No. 110. Plaintiff did not assert a violation of Section 1692c in the SAC, and the Court will not consider it.

On the other hand, Plaintiff has cited no authority suggesting that Defendants' failure to unfreeze her bank account violated Section 1692d as a matter of law. Consequently, there is a dispute of material fact as to whether Defendants' conduct was harassing or oppressive. The Court denies each of the Motions with respect to Plaintiff's Section 1692d claim.

### 2. Sections 1692e(2)(A) and 1692f

Section 1692e(2)(A) prohibits debt collectors from misrepresenting the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a). Section 1692f prohibits the use of "unfair or unconscionable means" to collect or attempt to collect any debt, including "the collection of any amount" not authorized by agreement or law. 15 U.S.C. § 1692f(1). Plaintiff argues that she is entitled to summary judgment based on the undisputed facts that (1) Defendants never had a judgment against her; (2) F&G, acting on behalf of LVNV and Resurgent, represented to PNC Bank that LVNV had a judgment against Plaintiff; and (3) Defendants successfully withdrew funds from Plaintiff's bank account. The Court agrees.

Plaintiff relies principally on Reid v. LVNV Funding, LLC, No. 14-471, 2016 WL 247571 (D. Utah Jan. 20, 2016), a case involving similar facts to the instant action. In Reid, the court found LVNV and its attorneys strictly liable under Sections 1692e(2)(A) and 1692f because they misrepresented to the plaintiff's employer that LVNV had a default judgment against the plaintiff in order to garnish the plaintiff's wages. Id. at *3-4. LVNV had actually obtained a judgment against a different individual with a different name, who had evidently supplied the plaintiff's social security number in incurring the underlying debt. Id. at *1. The Court entered partial summary judgment on the issue of liability in favor of the plaintiff, holding that "garnishing wages from someone who did not owe the debt falsely represents the legal nature of the debt under Section 1692e(2)(A)." Id. at *4. With respect to Section 1692f(1), the Court held that notwithstanding LVNV's compliance with state garnishment procedures, the garnishment of an employee's wages pursuant to a judgment against a third party was "not permitted by law." Id. at *3.

Here, as in Reid, Defendants represented to PNC Bank that they had a judgment against Plaintiff to obtain a levy when, in fact, the New York Judgment was entered against an individual with a different name.[9] DSOMF ¶¶ 9, 13-14. It is true, as Defendants note, that the error discussed in Reid was more egregious because there, the names of the judgment debtor and plaintiff were completely dissimilar, whereas here, "Mervelin" and "Mevelyn" are only two letters apart. Nonetheless, the strict liability imposed by the FDCPA means that the reasonableness of the error is irrelevant.[10]

---

[9] As noted in the May 2021 Order, this fact distinguishes the instant matter from cases holding that a levy or garnishment on a debtor's assets pursuant to a presumptively valid judgment in the debtor's name is lawful, even if that judgment is later vacated. See May 2021 Order at 6 n.7. Here, by contrast, Defendants never obtained a judgment against Plaintiff in the first instance, rendering their levy unlawful. See N.Y. C.P.L.R. 5232(a) (permitting judgment creditor to request a "levy upon any interest of the judgment debtor") (emphasis added).

[10] In Reid, the Court rejected LVNV's assertion of the "bona fide error" defense set forth in Section 1692k(c) after concluding that the defendants "never explain[ed] what internal process they had in place to prevent them from seeking garnishment from the wrong person." 2016 WL 247571, at *5. Again, Defendants here have not attempted to invoke Section 1692k(c) nor presented evidence of procedures designed to prevent levying upon someone who is not a judgment debtor.

Defendants last attempt to manufacture a dispute of material fact through speculation that—despite the difference between the name of Plaintiff and the judgment debtor—either Plaintiff or a member of her family incurred the underlying Debt. The Court finds Defendants' arguments in this regard unpersuasive.[11] But regardless of who incurred the Debt, the alleged violations of Sections 1692e(2)(A) and 1692f are premised on the undisputed facts that Defendants never had a judgment against Plaintiff but represented that they had such a judgment in order to freeze Plaintiff's bank account and withdraw funds. Defendants therefore "falsely represented the legal nature of the debt" to PNC Bank and obtained Plaintiff's funds in a manner "not permitted by law."

Plaintiff is entitled to summary judgment as to liability on her claims brought under FDCPA Sections 1692e(2)(A) and 1692f. A jury must determine what actual damages, if any, Plaintiff incurred as a result.

### B.    Intrusion upon Seclusion (Count II)

Plaintiff and Defendants each argue that they are entitled to summary judgment on Plaintiff's claim for common law intrusion upon seclusion. The Court finds that questions of material fact preclude summary judgment.

To prevail on a claim for intrusion upon seclusion, a plaintiff must prove that (1) the defendant "intentionally intrud[ed], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns"; and (2) "the intrusion would be highly offensive to a reasonable person." Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 316 (2010). The "intentional intrusion" element requires a showing that the defendant knew it lacked the plaintiff's personal permission to intrude, regardless of whether it thought the intrusion was legal. In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 293-94 (3d Cir. 2016). Defendants do not dispute that their levy on Plaintiff's bank account was an intentional intrusion on Plaintiff's affairs.

The "offensiveness" of an intrusion is typically a question for the jury. Id. at 295. This Court previously found that Plaintiff had plausibly alleged a highly offensive intrusion to the extent Defendants "access[ed] Plaintiff's bank account with knowledge of the mistaken identity." Oct. 2019 Opinion at 8-9. Following discovery, the record now includes evidence showing that Defendants accessed Plaintiff's PNC account well after being placed on notice that the name associated with the bank account did not match the name listed in the New York Judgment. For

---

[11] Specifically, Defendants have presented no evidence to refute Plaintiff's testimony that she did not authorize anyone to use her personal information to obtain the underlying Account and did not receive any money, goods, services, or other benefits related to the Account. Pl. SOMF ¶ 5.

Defendants argue that the circumstances surrounding Plaintiff's claim of identity theft are "suspicious" because "Mevelyn" resided at the New York Address, where Plaintiff formerly lived and where members of Plaintiff's family lived until 2020 and because in 2008, around the time of Defendant's judgment against "Mevelyn," Capital One obtained a separate judgment against a "Mevelyn" Gomez. However, these facts are entirely consistent with Plaintiff's position that an identity thief misappropriated her personal information to open credit accounts using a similar name. Defendants also note that Plaintiff signed her first dispute letter to F&G as "Mevelyn." See Siachos Decl. Ex. 8. Yet in that same letter, Plaintiff clearly identified herself as "Mervelin." Id. Plaintiff testified that she signed the name "Mevelyn" "because that was the name that [F&G] had on file and so they could know who the person is." PSOMF ¶ 26. Finally, Defendants point to the fact that Plaintiff refused to provide an ID Theft Affidavit for several months. But Plaintiff's apparent reluctance to complete a form provided by F&G can in no way be construed as an admission with respect to the underlying Debt, particularly given Plaintiff's consistent and repeated position that she did not incur the Debt.

substantially the same reasons discussed above with respect to Plaintiff's Section 1692d claim, a jury must determine whether Defendants' conduct amounted to a "highly offensive" intrusion upon seclusion. Cf. Reid, 2016 WL 247571, at *7-8 (finding jury question as to whether LVNV's garnishment of plaintiff's wages pursuant to a judgment obtained against a third party amounted to a "highly offensive" invasion of privacy under Utah law).

The Motions are therefore denied with respect to Count II.

## V.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment on Liability, ECF No. 100, is **GRANTED in part** and **DENIED in part**. Summary judgment is granted with respect to Defendant's liability on Plaintiff's claims under Sections 1692e(2)(A) and 1692f of the FDCPA but is otherwise denied. Defendants' Motions for Summary Judgment, ECF Nos. 98 & 99, are each **DENIED**.

                                                SO ORDERED.

                                      */s Madeline Cox Arleo*
                                      **MADELINE COX ARLEO**
                                      **UNITED STATES DISTRICT JUDGE**